UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JANE DOE,**

           **Plaintiff;**

**v.**

**CITY OF LANSING; LANSING
PUBLIC SCHOOLS; LANSING
PUBLIC SCHOOL DISTRICT BOARD
OF EDUCATION; SAMUEL
SINICROPI (official capacity);
YVONNE CANUL (individual and
official capacity); MARK COSCARELLA
(individual capacity); DONNA POHL
(individual and official capacity);
MATTHEW PRIEBE (individual and
official capacity); and OTHER
UNIDENTIFIED DOES (individual
and official capacity),**

           **Defendants.**

**Case No.:**

**Hon.**

**Complaint and Jury Demand**

---

**H. James White (P56946)**
**Alexander S. Rusek (P77581)**
**Daniel J. Sturdevant (P82936)**
White Law PLLC
Attorneys for Plaintiff
2549 Jolly Road, Suite 340
Okemos, Michigan 48864
Ph.: (517) 316-1195
Fax: (517) 316-1197
W: www.whitelawpllc.com
E: jameswhite@whitelawpllc.com
E: alexrusek@whitelawpllc.com
E: danielsturdevant@whitelawpllc.com
E: discovery@whitelawpllc.com

**City of Lansing**
Defendant
124 W. Michigan Avenue
Lansing, Michigan 48933

**Lansing Public Schools**
Defendant
519 W. Kalamazoo Street
Lansing, Michigan 48843

**Lansing Public School District
Board of Education**
Defendant
519 W. Kalamazoo Street
Lansing, Michigan 48843

**Samuel Sinicropi**
Defendant
519 W. Kalamazoo Street
Lansing, Michigan 48843

**Yvonne Canul**
Defendant
519 W. Kalamazoo Street
Lansing, Michigan 48843

**Mark Coscarella**
Defendant
519 W. Kalamazoo Street
Lansing, Michigan 48843

**Donna Pohl**
Defendant
519 W. Kalamazoo Street
Lansing, Michigan 48843

**Mary Carlisle**
Defendant
519 W. Kalamazoo Street
Lansing, Michigan 48843

**Matthew Priebe**
Defendant
16927 S. 163rd East Ave.
Bixby, Oklahoma 74008

---

## TABLE OF CONTENTS

---

**Caption**…………………………………………………………….….......1

**Table of Contents**……………..………………………………………3

**Complaint**……………………………………………………….….4

    **I.**    Preliminary Statement and General Allegations…..………………4

    **II.**    Jurisdiction and Venue……………………………………...23

    **III.**    Parties and Key Individuals…………………………………...25

    **IV.**    Causes of Action…………………………………………27

    **V.**    Damages for All Causes of Action..…………………………...44

    **VI.**    Request for Relief……………………………………...46

**Jury Demand**……………………………………………………...48

---

## COMPLAINT

---

**NOW COMES** Plaintiff Jane Doe, by and through her attorneys White Law PLLC, and hereby alleges and states as follows:

## I.   PRELIMINARY STATEMENT AND GENERAL ALLEGTIONS

1.   On just another school day in May 2018, Plaintiff Jane Doe ("Jane Doe"), a minor child at the time, was sexually assaulted by former Lansing Police Department Officer Matthew Priebe ("Mr. Priebe") as he drove her to her aunt's house after she had started to feel ill at school.

2.   Prior to sexually assaulting Jane Doe, Mr. Priebe, using his position of power as a school resource officer at Eastern High School in Lansing, Michigan, had spent the 2017-2018 school year attempting to groom Jane Doe in an effort to make sexually assaulting her easier.

3.   As more thoroughly set forth in this Complaint, Mr. Priebe's grooming included, at a minimum, Mr. Priebe video chatting with Jane Doe in a sexually provocative manner. In one instance, depicted below, Mr. Priebe is changing out of his uniform in what appears to be a Lansing Police Department changing room. Mr. Priebe is also depicted showing Jane Doe his tattoos, including one depicting what appear to be representation of his children's feet:



(Attached as Exhibit 1 – Capture of Video Sent to Jane Doe by Mr. Priebe)

4.      After attempting to groom Jane Doe, in May 2018, at the absolute minimum, Mr.

Priebe sexually assaulted Jane Doe by forcefully fondling Jane Doe's inner leg in

a sexual manner, placing his fingers into a hole in her pants while sexually

assaulting her, and asking her and attempting to make her kiss him as she exited his Lansing Police Department patrol vehicle.

5.  Not only was Jane Doe a vulnerable child when sexually assaulted by Mr. Priebe, Mr. Priebe further preyed on her weakness due to the illness she was suffering that day that caused her to leave school.

6.  Jane Doe was certainly not the first, and may not even be the last, student at Eastern High School that was by groomed by, and sexually abused by, Mr. Priebe while he was employed as a public safety officer at Eastern High School.

7.  The other Defendants in this matter were at all times in a position to prevent the sexual assaults and harassment of Jane Doe, but they either willingly or negligently failed to do so.

8.  Defendants Lansing Public Schools ("Defendant Schools"), Lansing Public School District Board of Education ("Defendant Board"), and the City of Lansing ("Defendant City") provided Mr. Priebe unfettered access to the Eastern High School student body and opportunities to sexually molest, assault, and harass its young female students despite knowledge of his sexually deviant and unlawful behavior in a position allegedly meant to provide safety to students.

9.  Despite being in a position to prevent Jane Doe's sexual assault and harassment, the Defendants failed Jane Doe and placed her and other minor students in harm's way by continuing to employ Mr. Priebe despite his apparent sexual deviancy and improper conduct.

10.  Because of the actions and omissions of the Defendants, Mr. Priebe was able to gain Jane Doe's trust as a public safety officer which he used to forcefully sexually assault and harass Jane Doe by groping her, sending her sexually explicit text messages, and attempting to kiss her on her face.

11.  Jane Doe now bring this lawsuit seeking justice against the enablers and perpetrator of the sexual abuse she suffered and she seeks declaratory, injunctive, equitable, and monetary relief as a result of the injuries she sustained from Mr. Priebe and the other named defendants in this matter.

**JANE DOE BEGINS TO ATTEND EASTERN HIGH SCHOOL**

12.  Jane Doe began attending Eastern High School in the Fall of 2017 after attending Sexton High School the previous year.

13.  Jane Doe first met Mr. Priebe during the fall semester of 2017 through Defendant Mary Carlisle ("Ms. Carlisle"), another public safety officer employed at Eastern High School.

14.  Jane Doe's first memory of meeting Mr. Priebe was during the fall semester in 2017. Jane Doe was not working well with her computer class teacher and was sent to see Mr. Priebe in his office in Eastern High School.

15.  While in Mr. Priebe's office, Jane Doe would talk to Mr. Priebe and do her school work.

16.  Continuing through the fall semester in 2017, Jane Doe would see Mr. Priebe in

his office when she was in trouble.

17.  At some point during the 2017-2018 school year, Jane Doe began seeing Mr. Priebe more often around Eastern High School's campus.

18.  Jane Doe started seeing Mr. Priebe walk around during her lunch hour at school and they began interacting more often.

19.  As the school year continued, Jane Doe began spending time with her friends and Mr. Priebe in his office at Eastern High School.

20.  During these times, Jane Doe would be in the office with two to three of her female friends and sometimes other people would also be in his office during the school day.

21.  Jane Doe also began going to Mr. Priebe's office during her library class during the 2017-2018 school year.

22.  Mr. Priebe not only allowed, but encouraged that, his office to be used as a "hang out" spot for students, and in particular, young female students.

23.  It was known amongst teachers, paraprofessionals, and administrators at Eastern High School that a number of young female students were consistently spending inappropriate amounts of time with Mr. Priebe in his office during school hours.

24.  Defendants took no action to prevent Mr. Priebe from sexually assaulting Eastern High School students.

25.  Ms. Carlisle, while employed by Defendant Schools and Defendant Board, wore a uniform and acted as a security guard to the best of Jane Doe's knowledge.

26. Ms. Carlisle's office was located directly next to Mr. Priebe's office.

27. Ms. Carlisle's office was positioned so close to Mr. Priebe's office that she knew about the demographic of students that spent significant amounts of time in Mr. Priebe's office.

28. Further, Ms. Carlisle would occasionally come into Mr. Priebe's office and engage in conversation with him and the young female students that were present in his office, including Jane Doe.

29. On at least one occasion, a math teacher came into Mr. Priebe's office and asked the female students present what they were all doing in Mr. Priebe's office.

30. On another occasion, Ms. Carlisle informed Jane Doe that the previously discussed math teacher had asked Ms. Carlisle why there were so many young girls that were always in Mr. Priebe's office and other similar questions.

31. Ms. Carlisle has admitted that she herself had to ask multiple students to leave Mr. Priebe's office during the school year because they were missing classes.

32. Ms. Carlisle has admitted that she has had at least two interactions with Mr. Priebe outside of class, once when Mr. Priebe picked her up from home and drove her back, and once when she met Mr. Priebe and another woman at Leroy's Bar in Lansing, Michigan. She has stated that she also went to Corey's Bar in Lansing, Michigan with Mr. Priebe.

33. Eastern High School Teacher Robyne Murray ("Ms. Murray") has stated that she had to tell students to leave Mr. Priebe's office because they should have been in

class prior to May 30, 2018.

34.   Prior to May 30, 2018, Ms. Murray reported to Principal Donna Pohl that there was an issue with students "hanging out" in Mr. Priebe's office.

35.   Jane Doe had originally met Ms. Carlisle after starting at Eastern High School in 2017.

36.   Jane Doe met Ms. Carlisle during lunch one day and Ms. Carlisle would come to act as a mentor and even as a friend to Jane Doe.

37.   It was Ms. Carlisle that would take Jane Doe to Mr. Priebe's office originally and when she was in trouble thereafter.

38.   The relationship fostered by Ms. Carlisle with Jane Doe would ultimately shift to such a level that Jane Doe now recognizes that it was too close, too involved, and unprofessional.

39.   Jane Doe trusted Ms. Carlisle, but Ms. Carlisle failed to protect her and abused the trust enshrined in her.

## MR. PRIEBE GROOMS JANE DOE IN PREPARATION FOR HIS FUTURE SEXUAL ASSAULT

40.   Mr. Priebe's grooming behavior towards Jane Doe escalated over the 2017-2018 school year.

41.   Mr. Priebe began seeing Jane Doe more and more often in his office.

42.   Mr. Priebe used multiple social media accounts to contact, interact with, and

groom students at Eastern High School.

43.     Mr. Priebe began "following" Jane Doe on the social media platform Instagram.

44.     Mr. Priebe maintained an Instagram account under the name "bhad_bitch_preebe."

45.     Mr. Priebe used the "bhad_bitch_preebe" Instagram account to follow and interact with students.

46.     The "bad_bitch_priebe" account was known amongst the Eastern High School student body.

47.     Mr. Priebe used the "bhad_bitch_preebe" Instagram account to make inappropriate and unprofessional posts for children to see. One example is below:



(Attached as Exhibit 2 – Capture of Video Posted to Instagram by Mr. Priebe)

48.   Mr. Priebe encouraged and allowed many children to follow the "bhad_bitch_preebe" Instagram account.

49.   Mr. Priebe also posted other images of him in his Lansing Police Department vehicle putting his middle finger up, similar to Exhibit 2, on the "bhad_bitch_preebe" Instagram account.

50.   On one occasion, Jane Doe, still a minor, posted a picture on Instagram of her wearing a swimsuit while tubing.

51.   Mr. Priebe, utilizing his "bhad_bitch_preebe" Instagram account, commented "heart eye emojis" on the picture posted by Jane Doe. The emojis posted by Mr. Priebe on the photograph were similar to the following:



52.   At various times, Mr. Priebe told numerous girls to not tell anyone about the "bhad_bitch_preebe" Instagram account because he was married with young children and he did not want his wife to find out about the account.

53.   Upon information and belief, Mr. Priebe deleted the "bhad_bitch_preebe" Instagram account on the day that Jane Doe disclosed her sexual assault to Eastern High School administrators.

54. Mr. Priebe also used the social media platform Snapchat to interact with, and groom, children.

55. During the 2017-2018 school year, Mr. Priebe added Jane Doe as a friend on Snapchat and attempted to communicate with her. Jane Doe deleted Mr. Priebe from her Snapchat account.

56. Additionally, Mr. Priebe used the video call service FaceTime to communicate with Jane Doe and groom her before sexually abusing her on May 30, 2018.

57. The manner in which Mr. Priebe acquired Jane Doe's phone number once again shows how he abused his position of power to groom and eventually sexually assault Jane Doe and other children at Eastern High School.

58. Jane Doe was in Mr. Priebe's office one day during the 2017-2018 school year.

59. Mr. Priebe approached the desk that Jane Doe was sitting at and asked her to call a phone number that was on a card on his desk to figure out whose phone number it was.

60. The card did not have a name printed on it.

61. Mr. Priebe tricked Jane Doe into calling the number, which ultimately proved to be Mr. Priebe's cell phone number.

62. When Jane Doe called Mr. Priebe's phone number, he acquired her cell phone number against her will.

63. Thereafter, Mr. Priebe would FaceTime (video call) Jane Doe to talk about different topics.

64.    On one occasion, Mr. Priebe called Jane Doe on FaceTime and showed her a large amount of cash, which may have been evidence collected by the Lansing Police Department.

65.    On another occasion, Mr. Priebe called Jane Doe on FaceTime and showed her a room with firearms all over its walls. Jane Doe believes that this room was either the Lansing Police Department armory (or other firearm storage facility) or Lansing Police Department's evidence room.

66.    On another occasion, Mr. Priebe called Jane Doe on FaceTime and appeared to be undressing in a Lansing Police Department locker room. He proceeded to show her his tattoos and body. Below are screenshots recorded during the FaceTime call where Mr. Priebe was exposing himself to Jane Doe:





(Attached as Exhibits 3, 4, and 1)

67. The redactions in the screenshots above cover Jane Doe's face in the FaceTime app.

68. Mr. Priebe would often call Jane Doe using FaceTime from his Lansing Police Department vehicle and would never call from his home.

69. Upon information and belief, Mr. Priebe also kept an amount of marijuana in his office at Eastern High School.

70. Upon information and belief, Mr. Priebe gave marijuana to Eastern High School students.

71. Upon information and belief, a bag containing marijuana, drug paraphernalia, and a cigar were found in Mr. Priebe's printer when searched on or about June 4, 2018.

72. Some of the items recovered from Mr. Priebe's office at Eastern High School are pictured below:



73. Upon information and belief, Mr. Priebe had young female Eastern High School students come to his house to babysit his daughter.

74. During the 2017-2018 school year, Jane Doe was asked by Mr. Priebe to come to his house to babysit his daughter, but she declined to do so.

75. At times, Jane Doe had thoughts that Mr. Priebe was acting inappropriately or trying to interact with her too much, but she kept telling herself that he was a trusted police officer and that he would not do anything inappropriate to her.

76. As set forth above, and in other ways, over the course of Jane Doe's time at Eastern High School, Mr. Priebe used his position of power, authority, and trust to gain Jane Doe's trust and groom her for future sexual exploitation.

## MR. PRIEBE SEXUALLY ASSAULTS JANE DOE

77. May 30, 2020 was just another day at school for Jane Doe when she arrived at Eastern High School in the morning. By the end of her day, her education and life would be derailed.

78. During the school day on May 30, 2020, Jane Doe began to feel unwell.

79. Jane Doe was going to walk to her nearby aunt's home to rest when she encountered Ms. Carlisle.

80. Ms. Carlisle suggested that Mr. Priebe drive Jane Doe to her aunt's house.

81. Jane Doe had not asked anyone to give her a ride to her aunt's home.

82. Mr. Priebe agreed with Ms. Carlisle's suggestion and offered to drive Jane Doe

to her aunt's home.

83.  Jane Doe retrieved her belongings from her locker and then went outside to Mr. Priebe's Lansing Police Department vehicle.

84.  Jane Doe's aunt's home is not located far from Eastern High School in Lansing, Michigan.

85.  Despite Jane Doe's aunt's home being close to Eastern High School and a straightforward drive, Mr. Priebe took multiple wrong turns and extended the time period the drive took significantly.

86.  After multiple wrong turns, Mr. Priebe finally stopped at a red light closer to Jane Doe's aunt's home.

87.  Mr. Priebe then sexually assaulted Jane Doe while stopped by placing his hand on her upper and inner leg in a sexual manner.

88.  Mr. Priebe then slipped his fingers inside of Jane Doe's pants and made contact with her bare skin.

89.  Jane Doe moved Mr. Priebe's hand off of her thigh and attempted to exit the Lansing Police Department vehicle that Mr. Priebe was driving.

90.  As she attempted to leave the vehicle, Mr. Priebe asked Jane Doe to kiss him and he attempted to kiss her.

91.  Jane Doe was able to escape the Lansing Police Department vehicle, but accidently left her belonging behind in the car because she had to leave quickly.

92.  Following her escape, Jane Doe went to her aunt's home where she took a

shower, went to bed for the rest of the day, and contemplated what had happened to her.

93.   After the sexual assault occurred, Jane Doe was in shock, embarrassed, confused, disappointed, and in disbelief about what Mr. Priebe had done to her.

94.   On May 31, 2018, Jane Doe returned to Eastern High School in the morning.

95.   Jane Doe met with her friend that morning and informed her friend that she was going to tell Eastern High School administration about Mr. Priebe.

96.   Jane Doe's friend asked if Mr. Priebe had tried something with Jane Doe and informed Jane Doe that Mr. Priebe had made her sit on his lap and kiss him in his office in Eastern High School.

97.   After hearing her friend's story about being abused by Mr. Priebe, she went to Ms. Carlisle to report her own assault.

98.   Ms. Carlisle was a trusted adult and had even become like a friend to Jane Doe over the course of the 2017-2018 school year.

99.   Jane Doe reported her assault to Ms. Carlisle and Ms. Carlisle took Jane Doe to Eastern High School's administrative offices. At this point, Ms. Carlisle left the area of the administrative offices.

100.  Jane Doe was left in the administrative offices for a significant amount of time and decided to walk around the school.

101.  While walking around, Jane Doe saw Mr. Priebe packing up his personal items in his office.

102. Upon information and belief, Ms. Carlisle had told Mr. Priebe about Jane Doe's allegations.

103. Upon information and belief, Ms. Carlisle's action provided Mr. Priebe the opportunity to destroy, delete, and otherwise hide evidence of his grooming behavior and sexual assaults.

104. Ms. Carlisle reported that she received a text message from (517) 864-6902, Mr. Priebe's phone number, on May 31, 2018 at 2:58 PM that read "I know you can't talk to me. Thanks for always being cool. You're great at what you do. That wasn't the place for me."

105. Jane Doe eventually met with Jaime Gundrum ("Ms. Gundrum"), the Assistant Principal at Eastern High School and informed her that Mr. Priebe had sexually assaulted her the day before.

106. Even before meeting with Ms. Gundrum, Jane Doe learned that Mr. Priebe had deleted the "bhad_bitch_preebe" Instagram account or blocked her from being able to access it.

107. If it was not for Jane Doe taking it upon herself to save screenshots of Mr. Priebe's social media posts and FaceTime calls, the evidence of his grooming behavior and sexual assaults may have been lost forever.

108. At the time that Mr. Priebe sexually assaulted Jane Doe, he was approximately 6'6" tall and weighed 300 pounds while Jane Doe was, and still is, a very petite girl.

109. Jane Doe did not have any sexual or romantic interest in Defendant Priebe because she was a high school girl and he was a 30-something-year-old man with a wife and children.

110. While Jane Doe may have been the last girl sexually assaulted by Mr. Priebe at Eastern High School, she was not the only girl sexually assaulted by him.

111. May 31, 2018 was the last day that Jane Doe attended Eastern High School as she felt she was unable to return to the school after being sexually assaulted by Mr. Priebe.

112. Jane Doe was denied educational opportunities as a result of the Defendants' actions.

113. After May 31, 2018 and to this day, no one from Eastern High School, Defendant Schools, or Defendant Board have reached out to Jane Doe regarding the sexual assault committed against her.

114. Upon information and belief, Mr. Priebe was allowed to resign from the Lansing Police Department on or about June 22, 2018.

115. On or about February 2, 2019, Mr. Priebe was charged with six criminal charges by the Livingston County Prosecutor's Office (after the Ingham County Prosecutor's Office recused itself).

116. In Case No.: 19-684-FY in the 54A District Court, Mr. Priebe was charged with the following crimes that occurred from November 2016 to May 2018:

   A.    Count 1 – Criminal Sexual Conduct – Second Degree (Multiple Variables)

contrary to MCL 750.520c, a felony punishable by up to 15 years imprisonment.

B.      Count 2 – Common Law Offenses contrary to MCL 750.505, a felony punishable by up to 5 years imprisonment.

C.      Count 3 – Children – Distributing Sexually Explicit, Visual or Verbal Matter contrary to MCL 722.675, a felony punishable by up to 2 years imprisonment.

D.      Count 4 – Attempted Criminal Sexual Conduct – Fourth Degree (Student) contrary to MCL 750.520e(1)(f), a misdemeanor punishable by up to 1 year imprisonment.

E.      Count 5 – Assault and Battery (against Jane Doe) contrary to MCL 750.81(1), a misdemeanor punishable by up to 93 days imprisonment.

F.      Count 6 – Assault and Battery contrary to MCL 750.81(1), a misdemeanor punishable by up to 93 days imprisonment.

117.    On or about August 12, 2019, Mr. Priebe plead No Contest before the Honorable Joyce Draganchuk in the 30th Circuit Court, Case No.: 19-000203-FH, to Counts 1, 2, 4, 5, and 6. Count 3 was dismissed by the People as part of Mr. Priebe's plea agreement. (Exhibit 5 – 30th Circuit Court Register of Actions)

118.    On or about October 2, 2019, Mr. Priebe was sentenced to 365 days jail with credit for 52 days. *Id.* Mr. Priebe is required to register as a sex offender and comply with the Michigan Sex Offenders Registration Act.

119. Upon information and belief, Mr. Priebe currently resides in Oklahoma and is required to comply with Oklahoma's Sex Offender Registration Act. *See* https://sors.doc.state.ok.us/svor/f?p=119:216:::NO:RP,216:O,P216_REG_ID :197DF929572F47353DD1E0F10FC32A2A,1.

120. Jane Doe further incorporates and realleges the allegations made in the Complaint filed by another of Mr. Priebe's victims in *Doe v. Lansing, City of et al.*, Case No.: 1:19-cv-01081-HYJ-RSK [Dkt. 1-1 at PageID.9-69.]. (Exhibit 6 – Summons and Complaint in 30th Circuit Court Case No.: 19-859-NO)

121. The Jane Doe Plaintiff in *Doe v. Lansing, City of et al.*, Case No.: 1:19-cv-01081-HYJ-RSK has alleged, in part, that she was sexually assaulted and harassed by Mr. Priebe from September 2015 through May 2017. *Id.* at PageID.34.

122. This action arises from Defendants' blatant, callous, and deliberately indifferent disregard for Jane Doe's federal and state rights and Defendants' deliberately indifferent and unreasonable response to a school resource officer's sexual assault, abuse, molestation, and harassment of female students.

123. As a direct and/or proximate result of Defendants' actions and inactions, Jane Doe has suffered and continues to suffer discomfort, sleep deprivation, physical illness, anxiety, severe depression, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life, loss of education opportunities, and will continue to suffer pain of mind and body, was prevented and will continue to be

prevented from performing her daily activities and obtaining the full enjoyment of life, and has sustained and will continue to sustain loss of earnings and earning capacity.

124. Defendants' deliberate indifference before, during, and after the sexual assault and harassment of Jane Doe was in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, 42 U.S. C. § 1983, as well as other Federal and State laws.

125. Defendants' failure to properly supervise Mr. Priebe and their negligence and/or gross negligence in continuing to allow Mr. Priebe to work in an environment with unfettered access to women and minors was in violation of Michigan law.

## II.   <u>**JURISDICTION AND VENUE**</u>

126. Jane Doe realleges and incorporates by reference the allegations contained in the previous paragraphs.

127. This action is brought pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, *et seq.*, as more fully set forth herein.

128. This is also an action to redress the deprivation of Jane Doe's constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983 and under Michigan law.

129. Subject matter jurisdiction is founded upon 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and

treaties of the United States.

130. Subject matter jurisdiction is also founded upon 28 U.S.C. § 1343, which gives district courts original jurisdiction over any civil actions authorized by law to be brought by any person to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States, and any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

131. Jane Doe further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a) to hear and decide claims arising under state law that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

132. The events giving rise to this lawsuit occurred in Ingham County, Michigan, which sits in the Southern Division of the Western District of Michigan.

133. Venue is proper in the United States District Court for the Western District of Michigan, pursuant to 28 U.S.C. § 1391(b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

## III.     PARTIES AND KEY INDIVIDUALS

134.   Jane Doe realleges and incorporates by reference the allegations contained in the previous paragraphs.

135.   Jane Doe is a resident of Michigan and was a minor resident of Michigan at the time of the abuse.

136.   Upon information and belief, Defendant Priebe was a resident of Michigan at the time of the sexual abuse committed against Jane Doe. Defendant Priebe is currently a resident of Oklahoma.

137.   Each assault by Mr. Priebe against Jane Doe occurred in the State of Michigan.

138.   Defendant City of Lansing is an incorporated municipality located in the City of Lansing, Ingham County, State of Michigan.

139.   Defendant Schools was at all relevant times and continues to be a public school system organized and existing under the laws of the state of Michigan.

140.   Defendant Schools receives federal assistance and is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681(a).

141.   Defendant Samuel Sinicropi ("Mr. Sinicropi") is the current Superintendent of the Lansing School District.

142.   Defendant Yvonne Canul ("Ms. Canul") was the Superintendent of the Lansing School District for all times relevant to this complaint.

143.   Defendant Mark Coscarella ("Mr. Coscarella") was the Deputy Superintendent of Lansing School District for all times relevant to this complaint.

144. Defendant Donna Pohl ("Ms. Pohl") was the Principal of Eastern High School for all times relevant to this complaint.

145. Defendant Mary Carlisle ("Ms. Carlisle") was a resource officer at Eastern High School for all times relevant to this complaint.

146. Mr. Sinicropi, Ms. Canul, Mr. Cascarella, Ms. Pohl, Ms. Carlisle, and Mr. Priebe were all employed by Defendant Schools during all relevant times to this Complaint.

147. Defendant Board is the governing body for Eastern High School and Defendant Schools.

148. Defendant Board, Defendant Schools, Mr. Sinicropi, Ms. Canul, Mr. Cascarella, Ms. Pohl, and Ms. Carlisle shall be referred to collectively as the Lansing School District Defendants.

149. At all relevant times, the Lansing School District Defendants and Mr. Priebe were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant School.

150. Mr. Priebe became employed by and/or an agent of Defendant Schools and/or Defendant City beginning in approximately June 2015 until he submitted his resignation on or about June 22, 2018.

151. At all relevant times, Mr. Priebe was acting in the scope of his employment or agency with Defendant Schools and Defendant City.

## IV.    CAUSES OF ACTION

### A.    COUNT ONE AS TO THE LANSING SCHOOL DISTRICT DEFENDANTS

### VIOLATIONS OF TITLE IX
### 20 U.S.C. §1681(a), *et seq.*

152.    Jane Doe realleges and incorporates by reference the allegations contained in the previous paragraphs.

153.    Title IX's statutory language states, "No *person* in the United States shall on the basis of sex, be … subject to discrimination under any education program or activity receiving Federal financial assistance …."[1](emphasis added).

154.    Jane Doe is a "person" under the Title IX statutory language.

155.    The Lansing School District Defendants receive federal financial assistance for its education program and is therefore subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C. §1681(a), *et seq.*

156.    The Lansing School District Defendants are required under Title IX to investigate allegations of sexual assault, sexual abuse, and sexual harassment.

157.    The U.S. Department of Education's Office of Civil Rights has explained that Title IX covers all programs of a school and extends to sexual harassment and

---

[1] U.S. Dept. of Ed., Office of Civil Rights, Dear Colleague Letter: Sexual Violence, April 4, 2011, n. 11 ("Title IX also protects third parties from sexual harassment or violence in a school's education programs and activities."). Available at https://www2.ed.gov/about/offices/list /ocr/letters/colleague-201104.pdf. Last accessed, January 5, 2017.

assault by employees, students and third parties.[2]

158.    Mr. Priebe's actions and conduct were carried out under the auspices of Jane
        Doe attending Eastern High School as a student.

159.    Mr. Priebe's conduct and actions of sending explicit pictures to Jane Doe,
        nonconsensual touching of Jane Doe's body, attempting to kiss Jane Doe, and
        otherwise groping Jane Doe constitutes sex discrimination under Title IX.

160.    As established by the United States Supreme Court, the following elements must
        be met in a Title IX Claim: (1) the sexual harassment was so severe, pervasive,
        and objectively offensive that it could be said to deprive the plaintiff of access to
        the educational opportunities or benefits provided by the school; (2) the funding
        recipient had actual knowledge of the sexual harassment; and (3) the funding
        recipient was deliberately indifferent to the harassment. *Vance v. Spencer Cty. Pub.
        Sch. Dist.*, 231 F.3d 253, 258-59 (6th Cir. 2000) (citing *Davis v. Monroe Cty. Bd. of
        Educ.*, 526 U.S. 629; 119 S.Ct. 1661; 143 L.Ed. 2d 839 (1999)).

161.    Mr. Priebe's sexual harassment and assault was so severe, pervasive, and
        objectively offensive that it denied Jane Doe educational opportunities.

162.    Jane Doe was unable to complete her required courses, was forced to drop out
        of Eastern High School and has had her future educational endeavors hindered.

163.    The Lansing School District Defendants also had knowledge of Mr. Priebe's

---

[2] U.S. Dept. of Ed., Office of Civil Rights, Questions and Answers on Title IX and Sexual Violence,
Apr. 29, 2014, at 1, 3, https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf.

sexually deviant behavior and propensities that spanned over a significant period of time and that was perpetrated against multiple female victims, even before Jane Doe began attending Eastern High School.

164. The Lansing School District Defendants were deliberately indifferent to Mr. Priebe's continued pattern of sexual abuse.

165. The Lansing School District Defendants failed to place guidelines or institute any protective measures against Mr. Priebe to protect the female students at Eastern High School.

166. The Lansing School District Defendants failed to adequately supervise Mr. Priebe or otherwise ensure that there were institutional guidelines to prevent him from sexually assaulting students.

167. The Lansing School District Defendants acted with deliberate indifference to known acts of sexual assault, abuse, and molestation on its premises by:

    A.    Allowing Mr. Priebe to continue his employment at Eastern High School and to continue to have access to  females on Eastern High School's campus;

    B.    Failing to properly address the prior allegations as required by Title IX;

    C.    Failing to institute corrective measures to prevent Mr. Priebe from violating and sexually abusing other  women and students;

    D.    Failing to adequately supervise Mr. Priebe; and

    E.    Failing to protect  females on Eastern High School's campus from Mr.

Priebe's sexually deviant behavior.

168. The Lansing School District Defendants acted with deliberate indifference because their lack of response to the allegations of sexual assault, abuse, and molestation was clearly unreasonable in light of the known circumstances of Mr. Priebe's actions with female students and his unrestricted access to female students.

169. The Lansing School District Defendants' failure to promptly and appropriately remedy and respond to the sexual assaults and harassment after they received notice subjected Jane Doe to further harassment as well as a sexually hostile environment—effectively denying her access to educational opportunities at Eastern High School.

170. As a direct and/or proximate result of the Lansing School District Defendants' actions and/or inactions, Jane Doe has suffered and continues to suffer discomfort, sleep deprivation, physical illness, anxiety, severe depression, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life, loss of education opportunities, and will continue to suffer pain of mind and body, was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, and has sustained and will continue to sustain loss of earnings and earning capacity.

### B.     COUNT TWO AS TO THE LANSING SCHOOL DISTRICT DEFENDANTS

### VIOLATION OF CIVIL RIGHTS
### 42 U.S.C. § 1983

171.   Jane Doe realleges and incorporates by reference the allegations contained in the previous paragraphs.

172.   Jane Doe, as a female, is a member of a protected class under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

173.   Jane Doe enjoys the constitutionally protected Due Process right to be free from the invasion of bodily integrity through sexual assault, abuse, or molestation.

174.   At all relevant times, the Lansing School District Defendants and Mr. Priebe were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or the Lansing School District Defendants.

175.   The acts as alleged above amount to a violation of these clearly established constitutionally protected rights, of which reasonable persons in the Lansing School District Defendants' positions should have known.

176.   The Lansing School District Defendants have the ultimate responsibility and authority to train and supervise its employees, agents, and/or representatives, in the appropriate manner of detecting, reporting, and preventing sexual abuse, assault, and molestation and as a matter of acts, custom, policy, and/or practice,

failed to do so with deliberate indifference.

177. As a matter of custom, policy, and and/or practice, the Lansing School District Defendants had and still have the ultimate responsibility and authority to investigate complaints against their employees, agents, and representatives from all individuals including but not limited to students, visitors, faculty, staff, or other employees, agents, and/or representatives.

178. The Lansing School District Defendants failed to do so with deliberate indifference.

179. The Lansing School District Defendants had a duty to prevent sexual assault, abuse, and molestation on their campus, premises, and during school related activities, that duty arising under the above-referenced constitutional rights, as well as established rights pursuant to Title IX.

180. Ultimately, the Lansing School District Defendants failed to adequately and properly address the complaints of its students and employees or other similarly-situated individuals by failing to take any corrective action when they learned of Mr. Priebe's sexually harassing and sexually assaultive behaviors at Eastern High School..

181. The Lansing School District Defendants' failure to adequately address the complaints and information about Mr. Priebe led to an unknown number of individuals being victimized, sexually assaulted, abused, and molested by Mr. Priebe, including Jane Doe.

182.   By failing to prevent the aforementioned sexual assault, abuse, and molestation upon Jane Doe, and by failing to appropriately respond and address reports of Mr. Priebe's sexual assault, abuse, and molestation, it amounted to deliberate indifference, therefore the Lansing School District Defendants are liable to Jane Doe pursuant to 42 U.S.C. § 1983.

183.   The Lansing School District Defendants are also liable to Jane Doe under 42 U.S.C. § 1983 for maintaining customs, policies, and practices which deprived Jane Doe of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

184.   The Lansing School District Defendants tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline Mr. Priebe, with the result that Mr. Priebe was allowed to violate the rights of persons such as Jane Doe.

185.   The Lansing School District Defendants' actions and/or inactions amounted to action with a discriminatory purpose against females, including Jane Doe.

186.   As a direct and/or proximate result of the Lansing School District Defendants actions and/or inactions, Jane Doe has suffered and continues to suffer discomfort, sleep deprivation, physical illness, anxiety, severe depression, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life, loss of education opportunities, and will continue to suffer pain of mind and body, was

prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, and has sustained and will continue to sustain loss of earnings and earning capacity.

### C. COUNT THREE AS TO DEFENDANTS MR. SINICROPI, MS. CANUL, MR. COSCARELLA, MS. POHL, MS. CARLISLE, AND MR. PRIEBE

### VIOLATION OF 42 U.S.C. § 1983

187. Jane Doe realleges and incorporates by reference the allegations contained in the previous paragraphs.

188. Under the Fourteenth Amendment, Jane Doe had the right as a public school student to personal security and bodily integrity and Equal Protection of Laws.

189. Defendants Ms. Canul, Mr. Coscarella, Ms. Pohl, Ms. Carlisle, and Mr. Priebe acted in their individual capacities and were state actors acting under the color of state law.

190. The Defendants each subjected Jane Doe to violations of her right to personal security and bodily integrity and Equal Protection of Laws by failing to adequately train and supervise Ms. Pohl, Ms. Carlisle, and Mr. Priebe and manifesting deliberate indifference to the ongoing sexual harassment of Jane Doe by Mr. Priebe.

191. Defendant Schools had and continue to have unconstitutional customs and policies of:

A.    Failing to investigate evidence misconduct against Defendant Schools' students in the nature of violations of their right to personal security and bodily integrity; and

B.    Failing to adequately train and supervise Defendant Schools' employees with regard to maintaining, preserving, and protecting students from violations of their right to personal security, bodily integrity, and Equal Protection of the Laws.

192.   Defendant Schools' policies and/or practices constituted disparate treatment of females and had a disparate impact on female students.

193.   Defendants Mr. Sinicropi, Ms. Canul, Mr. Coscarella, Ms. Pohl, Ms. Carlisle, and Mr. Priebe are or were at the time of the events within policymakers for the purpose of implementing Defendant Schools' unconstitutional policies and customs.

194.   As a direct and/or proximate result of the Defendants' actions and/or inactions, Jane Doe has suffered and continues to suffer discomfort, sleep deprivation, physical illness, anxiety, severe depression, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life, loss of education opportunities, and will continue to suffer pain of mind and body, was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, and has sustained and will continue to sustain loss of

earnings and earning capacity.

### D. COUNT FOUR AS TO THE LANSING SCHOOL DISTRICT DEFENDANTS AND CITY OF LANSING

### MONELL LIABILITY FOR
### FAILURE TO TRAIN AND SUPERVISE
### 42 U.S.C. § 1983

195. Jane Doe realleges and incorporates by reference the allegations contained in the previous paragraphs.

196. The Lansing School District Defendants' and the City of Lansing were "state actors" as part of a federally funded school system.

197. The Lansing School District Defendants' and the City of Lansing have the ultimate responsibility and authority to train and supervise its employees, agents, and/or representatives, including Mr. Priebe and all faculty and staff regarding their duties toward students, faculty, staff, and visitors.

198. The Lansing School District Defendants and the City of Lansing failed to train and supervise its employees, agents, and/or representatives including all faculty and staff, regarding the following duties:

    A.    Perceive, report, and stop inappropriate sexual conduct on campus;

    B.    Provide diligent supervision over students and other individuals;

    C.    Report suspected incidents of sexual abuse or sexual assault;

    D.    Ensure the safety of all students, faculty, staff, and visitors to Eastern High

School's campus;

E.      Provide a safe environment for all students, faculty, staff, and visitors to Eastern High School's premises free from sexual harassment; and,

F.      Properly train faculty and staff to be aware of their individual responsibility for creating and maintaining a safe environment.

199.    The above list of duties is not exhaustive.

200.    The Lansing School District Defendants and the City of Lansing failed to adequately train teachers, resource officers, and others regarding the aforementioned duties, which led to multiple violations of Jane Doe's rights.

201.    As a result of the Lansing School District Defendants and the City of Lansing's deliberate inaction to properly train and supervise their employees, the Lansing School District Defendants and the City of Lansing's actions amounted to action with a discriminatory purpose against  females, including Jane Doe.

202.    As a result, the Lansing School District Defendants and the City of Lansing deprived Jane Doe of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

203.    As a direct and/or proximate result of the Lansing School District Defendants and the City of Lansing's actions and/or inactions, Jane Doe has suffered and continues to suffer discomfort, sleep deprivation, physical illness, anxiety, severe depression, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss

of enjoyment of life, loss of education opportunities, and will continue to suffer pain of mind and body, was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, and has sustained and will continue to sustain loss of earnings and earning capacity.

### E.   COUNT FIVE AS TO THE LANSING SCHOOL DISTRICT DEFENDANTS AND CITY OF LANSING

### VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT M.C.L. 33.2101, *et seq.*

204.   Jane Doe realleges and incorporates by reference the allegations contained in the previous paragraphs.

205.   The Elliott-Larsen Civil Rights Act ("ELCRA") prohibits discrimination on the basis of sex in educational facilities. M.C.L. 33.2101, *et seq.*

206.   The Lansing School District Defendants and the City of Lansing had duties under the ELCRA, including the duty not to discriminate against or harass Jane Doe on the basis of sex and not to maintain a sexually hostile environment. *Id.*

207.   Mr. Priebe was the Lansing School District Defendants and the City of Lansing's agent for the purposes of these duties.

208.   Mr. Priebe sexually assaulted, abused, and molested Jane Doe in the course of his employment, agency, and/or representation of the Lansing School District Defendants and City of Lansing.

209.   The Lansing School District Defendants and City of Lansing were aware or should have been aware of Mr. Priebe's continued pattern of deviant behavior prior to May 2018, yet the Lansing School District Defendants and City of Lansing continued to permit Mr. Priebe to have unfettered access to females on Eastern High School's campus.

210.   A sexually hostile environment was created when Mr. Priebe sexually harassed Jane Doe by sending explicit pictures to Jane Doe, committed nonconsensual touching of Jane Doe's body, attempted to kiss Jane Doe, and otherwise groped Jane Doe, and constitutes sex discrimination under Title IX.

211.   The Lansing School District Defendants, the City of Lansing, and Mr. Priebe violated their duty under the ELCRA to not discriminate or harass Jane Doe in the ways described above.

212.   As such, the Lansing School District Defendants and City of Lansing discriminated against Jane Doe based on her sex.

213.   As a direct and/or proximate result of the Lansing School District Defendants and the City of Lansing's actions and/or inactions, Jane Doe has suffered and continues to suffer discomfort, sleep deprivation, physical illness, anxiety, severe depression, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life, loss of education opportunities, and will continue to suffer pain of mind and body, was prevented and will continue to be prevented from

performing her daily activities and obtaining the full enjoyment of life, and has

sustained and will continue to sustain loss of earnings and earning capacity.

### F. COUNT SIX AS TO THE LANSING SCHOOL DISTRICT DEFENDANTS AND CITY OF LANSING

### VICARIOUS LIABILITY

214. Jane Doe realleges and incorporates by reference the allegations contained in the

previous paragraphs.

215. Vicarious liability is indirect responsibility imposed by operation of law where an

employer is bound to keep its employees within their proper bounds and is

responsible if it fails to do so.

216. Vicarious liability creates agency between the principal and its agent, so that the

principal is held to have done what the agent has done.

217. The Lansing School District Defendants and the City of Lansing employed

and/or held Mr. Priebe out to be their agent and/or representative prior to May

2018.

218. Mr. Priebe was a police officer with the City of Lansing Police Department and

a school resource officer with the Lansing School District Defendants.

219. The Lansing School District Defendants and the City of Lansing are vicariously

liable for the actions of Mr. Priebe as set forth above that were performed during

the course of his employment, representation, and/or agency with the Lansing

School District Defendants and the City of Lansing

220. While acting as an employee and/or agent on behalf of the Lansing School District Defendants and the City of Lansing, and while performing his duties associated with his employment for the Lansing School District Defendants and the City of Lansing, Mr. Priebe sexually assaulted, abused, molested, and harassed Jane Doe.

221. As a direct and/or proximate result of the Lansing School District Defendants and the City of Lansing's actions and/or inactions, Jane Doe has suffered and continues to suffer discomfort, sleep deprivation, physical illness, anxiety, severe depression, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life, loss of education opportunities, and will continue to suffer pain of mind and body, was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, and has sustained and will continue to sustain loss of earnings and earning capacity.

## G. COUNT SEVEN AS TO MR. PRIEBE

### ASSAULT & BATTERY

222. Jane Doe realleges and incorporates by reference the allegations contained in the previous paragraphs.

223. The acts committed by Mr. Priebe against Jane Doe described herein constitute

assault and battery, actionable under the laws of Michigan.

224. Mr. Priebe committed nonconsensual sexual acts, which resulted in harmful or offensive contact with the body of Jane Doe.

225. Mr. Priebe committed acts that caused injury to Jane Doe by subjecting her to an imminent battery and/or intentional invasions of her rights to be free from offensive and harmful contact and such conduct demonstrated that Mr. Priebe had a present ability to subject Jane Doe to an immediate, intentional, offensive, and harmful touching.

226. Specifically, Mr. Priebe engaged in the nonconsensual touching of Jane Doe's body, attempting to kiss Jane Doe, and otherwise groping Jane Doe.

227. Jane Doe did not consent to any of the contact that was inflicted upon her by Mr. Priebe, which caused injury, damage, loss, and/or harm.

228. As a direct and/or proximate result of Mr. Priebe's actions, Jane Doe has suffered and continues to suffer discomfort, sleep deprivation, physical illness, anxiety, severe depression, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life, loss of education opportunities, and will continue to suffer pain of mind and body, was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, and has sustained and will continue to sustain loss of earnings and earning capacity.

### H.    COUNT EIGHT AS TO MR. PRIEBE

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

229.  Jane Doe realleges and incorporates by reference the allegations contained in the previous paragraphs.

230.  Intentional Infliction of Emotional Distress ("IIED") requires: (1) Extreme and Outrageous Conduct; (2) Intent or Recklessness; (3) Causation; and (4) Severe Emotional Distress. *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 602, 374 N.W.2d 905 (1985); *Lewis v. Legrow*, 258 Mich. App. 175, 196, 670 N.W.2d 675 (2003).

231.  The defendant's conduct must be so outrageous and extreme that it went "beyond all possible bounds of decency" and would be "regarded as atrocious and utterly intolerable in a civilized community." *Linebaugh v. Sheraton Michigan Corp.*, 198 Mich. App. 335, 342, 497 N.W.2d 585 (1993).

232.  Mr. Priebe used his authority and position to sexually assault, abuse, and molest Jane Doe.

233.  During the 2017-2018 school year, Mr. Priebe groomed Jane Doe so that he could more easily sexually assault her in the future.

234.  In May 2018, Mr. Priebe engaged in the nonconsensual touching of Jane Doe's body, attempting to kiss Jane Doe, and otherwise groping Jane Doe while he held a position of authority and trust over Jane Doe.

235.  To have a school resource officer use his position of power and authority to take

advantage of a student sexually against her will is utterly intolerable in a civilized community.

236. Mr. Priebe, in committing acts of sexual assault, abuse, and molestation as described above, exhibited conduct that is extreme, outrageous, and/or reckless in nature.

237. Mr. Priebe's conduct has caused and continues to cause Jane Doe to suffer emotional and psychological distress.

238. As a direct and/or proximate result of Mr. Priebe's outrageous actions, Jane Doe has suffered and continues to suffer discomfort, sleep deprivation, physical illness, anxiety, severe depression, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life, loss of education opportunities, and will continue to suffer pain of mind and body, was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, and has sustained and will continue to sustain loss of earnings and earning capacity.

## V.    DAMAGES FOR ALL AFOREMENTIONED CAUSES OF ACTION

239. Jane Doe realleges and incorporates by reference the allegations contained in the previous paragraphs.

240. As a direct and/or proximate result of Defendants' actions and/or inactions

stated above, Jane Doe has suffered and continues to suffer discomfort, sleep deprivation, physical illness, anxiety, severe depression, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life, loss of education opportunities, and will continue to suffer pain of mind and body, was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, and has sustained and will continue to sustain loss of earnings and earning capacity. The conduct, actions, and/or inactions of Defendants as alleged in the above stated counts and causes of action constitute violations of Jane Doe's Constitutional and Federal rights, as well as the common and/or statutory laws of the State of Michigan, and the United States District Court has jurisdiction to hear and adjudicate said claims.

241.   In whole or in part, as a result of some or all of the above actions and/or inactions of Defendants, Jane Doe has and continues to suffer irreparable harm as a result of the violations.

242.   The amount in controversy for Jane Doe exceeds the jurisdictional minimum of $75,000.00.

**VI.**     <u>**REQUEST FOR RELIEF**</u>

**WHEREFORE**, Jane Doe requests this Court and the finder of fact to enter a Judgment in Jane Doe's favor against all named Defendants on all counts and claims as indicated above in an amount consistent with the proofs of trial, and seeks against Defendants all appropriate damages arising out of law, equity, and fact for each or all of the above counts where applicable and hereby requests that the trier of fact, be it judge or jury, award Jane Doe all applicable damages, including but not limited to compensatory, special, exemplary, and/or punitive damages, in whatever amount Jane Doe is entitled, and all other relief arising out of law, equity, and fact, also including but not limited to:

    **A.**     Compensatory damages in an amount to be determined as fair and just under the circumstances by the trier of fact including, but not limited to medical expenses, loss of earnings, mental anguish, anxiety, humiliation, and embarrassment, violation of Jane Doe's Constitutional, Federal, and State rights, loss of social pleasure and enjoyment, and other damages to be proved;

    **B.**     Punitive and/or exemplary damages in an amount to be determined as reasonable or just by the trier of fact;

    **C.**     Reasonable attorney fees, interest, and costs; and,

    **D.**     Other declaratory, equitable, and/or injunctive relief, including but not limited to implementation of institutional reform and measures of

accountability to ensure the safety and protection of females and other individuals as appears to be reasonable and just.

**Respectfully Submitted,**

**Dated: 10/21/2020**     **/s/ Alexander S. Rusek**
                         **H. James White (P56946)**
                         **Alexander S. Rusek (P77581)**
                         **Daniel J. Sturdevant (P82936)**
                         White Law PLLC
                         Attorneys for Plaintiffs
                         2549 Jolly Road, Suite 340
                         Okemos, Michigan 48864
                         Ph.: (517) 316-1195
                         Fax: (517) 316-1197
                         W: www.whitelawpllc.com
                         E: jameswhite@whitelawpllc.com
                         E: alexrusek@whitelawpllc.com
                         E: danielsturdevant@whitelawpllc.com
                         E: discovery@whitelawpllc.com

---

## JURY DEMAND

---

**NOW COMES** the Plaintiff, by and through her attorneys White Law PLLC, and hereby demands a trial by jury on all claims set forth above.

**Respectfully Submitted,**

Dated:  10/21/2020                   /s/ Alexander S. Rusek
                                     **H. James White (P56946)**
                                     **Alexander S. Rusek (P77581)**
                                     **Daniel J. Sturdevant (P82936)**
                                     White Law PLLC
                                     Attorneys for Plaintiffs
                                     2549 Jolly Road, Suite 340
                                     Okemos, Michigan 48864
                                     Ph.: (517) 316-1195
                                     Fax: (517) 316-1197
                                     W: www.whitelawpllc.com
                                     E: jameswhite@whitelawpllc.com
                                     E: alexrusek@whitelawpllc.com
                                     E: danielsturdevant@whitelawpllc.com
                                     E: discovery@whitelawpllc.com